GASKINS, J.
 

 1 pThe defendant, Felton Wayne Dukes, was convicted of possession of a Schedule I controlled dangerous substance (CDS), ecstasy, and distribution of a Schedule II CDS, cocaine. He was subsequently adjudicated a fourth felony offender and sentenced to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. The defendant now appeals. The defendant’s convictions, adjudication as a fourth felony habitual offender and sentence as such are affirmed. However, finding error patent in the trial court’s failure to sentence the defendant on his conviction for possession of ecstasy, we remand.
 

 FACTS
 

 The defendant was arrested on January 21, 2009, after selling cocaine to and buying ecstasy from an undercover (UC) narcotics agent. The defendant was charged by bill of information with one count of possession of a Schedule I CDS, ecstasy, in violation of La. R.S. 40:966(E), and one count of distribution of a Schedule II CDS, cocaine, in violation of La. R.S. J240:967(A)(1)(A). On May 26, 2009, in response to the defendant’s motion for discovery, the state filed a response in which it notified the defendant of its intent to offer a “certified lab report” into evidence as proof of its contents “in conformity with La. R.S. 15:499-501.”
 

 The certificate attached to the responses indicated that on February 2, 2009, at 10:35 a.m., K. Knox delivered to Tiffany Davis one sealed plastic bag which contained two plastic bags containing 15 brown tablets with logos, and one sealed plastic bag containing five plastic bags with white material. The certificate indicates that a CDS analysis was requested on the items and that Randall Robillard conducted the analysis on February 23, 2009. Lastly, the certificate indicated the results of the analysis as follows:
 

 ITEM 1 WAS DETERMINED TO CONTAIN 3,4-METHYLENEDIOXY-METHAMPHETAMINE (MDMA), SCHEDULE I.
 
 [1]
 

 ITEM 2 WAS DETERMINED TO CONTAIN COCAINE, SCHEDULE II.
 

 The certificate was signed by Randall Ro-billard and certified by Dr. Pat Wojtkiew-icz, the director of the North Louisiana Criminalistics Laboratory.
 

 On November 17, 2009, the defendant was tried before a jury. The state attempted to introduce as evidence the certificate of analysis issued by the North Louisiana Criminalistics Laboratory to establish that the substance |4the defendant sold to the UC agent was cocaine and that the substance he purchased from the UC agent was ecstasy. Because Mr. Robillard was not available at trial, the state called Bruce Stentz, another analyst from the lab, to testify as to the report’s contents. The defense objected to the use of the report and Mr. Stentz’s testimony because Mr. Robillard was not available for cross-examination. Finding that the state had
 
 *492
 
 complied with the statutory requirements for use of a certificate of analysis as prima facie proof of the facts shown thereon in accordance with La. R.S. 15:499-501, the trial court overruled the defendant’s objections and allowed the introduction of the certificate and Mr. Stentz’s testimony.
 

 After the conclusion of the evidence, the jury found the defendant guilty as charged on both counts. After the verdict was read, the state informed the court that it was filing a bill of information to have the defendant adjudicated a fourth felony habitual offender. The defendant waived formal arraignment and pleaded not guilty. At the defendant’s request, the trial court also ordered the preparation of a presen-tence investigation (PSI) report. Subsequent motions by the defendant seeking a new trial and a post-verdict judgment of acquittal were denied. On March 18, 2010, the defendant was adjudicated a fourth felony habitual |soffender on the basis of the present conviction for distribution of Schedule II CDS and the following prior convictions:
 

 (1) On December 6, 1994, the defendant pled guilty to one count of possession of a Schedule II CDS in docket number 171,278, on the docket of the First Judicial District Court, Parish of Caddo.
 

 (2) On November 14, 1997, the defendant pled guilty to one count of possession of marijuana, a Schedule I CDS (second offense), in docket number 191,490 on the docket of the First Judicial District Court, Parish of Caddo.
 

 (3) On November 14, 1997, the defendant pled guilty to one count of distribution of a Schedule II CDS, in docket number 189,724 on the docket of the First Judicial District Court, Parish of Caddo.
 
 [2]
 

 (4)On April 24, 2006, the defendant pled guilty to one count of possession with intent to distribute a Schedule II CDS, in docket number 249,963 on the docket of the First Judicial District Court, Parish of Caddo.
 

 The defendant was sentenced to life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence. The trial court denied the defendant’s Dorthey
 
 [3]
 
 motion for a downward departure from the mandatory life sentence.
 

 The defendant appeals, making three assignments of error.
 

 LABORATORY REPORT
 

 The defendant argues that the trial court erred in allowing the trial testimony of a lab technician who did not perform the tests on the alleged drugs seized in this case and in permitting this witness to provide the foundation for the introduction of the laboratory report. The defendant 1 ^maintains that the certificate of analysis should not have been admitted into evidence in light of the recent United States Supreme Court decision in
 
 Melendez-Diaz v. Massachusetts,
 
 — U.S. -, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), which found that admitting such reports violates the confrontation clause and the holding in
 
 Crawford v. Washington,
 
 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
 

 The state argues that Louisiana’s statutory scheme for use of crime lab certificates of analysis is not violative of a defen
 
 *493
 
 dant’s rights under the Confrontation Clause because, unlike the affidavit which the court held objectionable in
 
 Melendez-Diaz,
 
 the certificates are not testimonial in nature. In support of this argument, the state cites the Louisiana first circuit court of appeal’s recent opinion in
 
 State v. Beauchamp,
 
 2010-0451 (La.App. 1st Cir.9/10/10), 49 So.3d 5.
 

 Law
 

 At the time of the defendant’s trial,
 
 [4]
 
 La. R.S. 15:499 authorized all criminalistics laboratories, coroners, forensic pathologists, and other persons or entities practicing in fields of knowledge and expertise in the gathering, examination, and analysis of evidence by scientific means to make proof of that examination and analysis of physical evidence by the certificate of the person in charge of the facility, which certificate shall contain:
 

 |7(1) The date and time such evidence was delivered to such facility.
 

 (2) The name of the person making such delivery, and the person receiving same.
 

 (3) A brief description of the evidence.
 

 (4) The type of examination or analysis requested.
 

 (5) The name of the person making the examination or analysis.
 

 (6) The date or dates of the examination or analysis.
 

 (7)The results of the examination or analysis.
 

 Subparagraph B of the statute also required that the certificate give the name and address of the facility in which the examination or analysis was made, and be signed by the person making the examination or analysis and by the person in charge of the facility. La. R.S. 15:500 provided that the courts shall receive as evidence any certificate made in accordance with La. R.S. 15:499 as prima facie proof of the facts shown thereon, and as prima facie proof of proper custody of the physical evidence listed thereon from time of delivery of said evidence to the facility until its removal therefrom. Prior to its use as evidence, however, La. R.S. 15:501 specifically required the party seeking to introduce a certificate to give written notice of that intent no less than 10 days prior to the commencement of trial and to include [sa copy of the certificate with said notice. The party against whom such certificate was offered could then subpoena the person who performed the examination or analysis of the evidence. If the subpoena was requested at least five days prior to the commencement of trial or the person subpoenaed responded to the subpoena, the certificate would not be prima facie proof of its contents or of proper custody. La. R.S. 15:501(B)(1).
 

 
 *494
 
 The Confrontation Clause of the Sixth Amendment provides that, “[in] all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him,” and limits the admission of testimonial hearsay statements at criminal trials to situations when the declarant is unavailable to testify and the defendant has had a prior opportunity to cross-examine the declarant.
 
 Crawford v. Washington, supra.
 
 The Sixth Amendment safeguards the defendant’s right to confront his accusers and to subject then-testimony to rigorous testing in an adversary proceeding before the trier of fact.
 
 California v. Green,
 
 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970);
 
 State v. Kennedy,
 
 2005-1981 (La.5/22/07), 957 So.2d 757,
 
 reversed in part on other grounds, Kennedy v. Louisiana,
 
 554 U.S. 407, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008). See also La. Const. art. 1, § 16.
 

 In
 
 Melendez-Diaz v. Massachusetts, supra,
 
 the United States Supreme Court held that an analyst’s affidavit that certain contraband tested positive for cocaine constituted “testimonial” evidence, and was inadmissible in the absence of the trial testimony of the analysts who performed such tests, pursuant to the Confrontation Clause of the Sixth Amendment.
 
 Melendez-Diaz,
 
 129 S.Ct. at 2532. Justice Sca-lia, writing for the court, stated that the affidavit fell within the “core class of testimonial statements,” the sole purpose of which was to establish in court the identity of the substance removed from the accused as cocaine.
 

 In
 
 State v. Davidson,
 
 44,916 (La.App.2d Cir.2/10/10), 32 So.3d 290,
 
 writ denied,
 
 2010-0579 (La.10/1/10), 45 So.3d 1096, a crime lab report was admitted at trial over the objection of defense counsel, on the ground that he had not been notified of the report. On appeal, this court concluded that the report was “clearly testimonial, as was the report at issue in
 
 Melendez-Diaz.”
 
 32 So.3d at 297.
 

 In
 
 State v. Beauchamp, supra,
 
 the Louisiana first circuit court of appeal distinguished the Massachusetts law permitting the use of “certificates of analysis” as proof, which was struck down in
 
 Melendez-Diaz,
 
 from Louisiana’s notice-and-demand statutory scheme for use of an analyst’s report as evidence. The court noted that
 
 Melendez-Diaz
 
 itself recognized that | pother states’ “notice-and-demand statutes” did not shift the burden by converting the prosecution’s duty under the Confrontation Clause into the defendant’s privilege under state law or the Compulsory Process Clause. Because “[t]he defendant always has the burden of raising his Confrontation Clause objection,” the court reasoned “notice-and-demand statutes simply govern the time within which he must do so.”
 
 State v. Beauchamp,
 
 49 So.3d at 8, citing
 
 Melendez, - Diaz,
 
 — U.S. at -, 129 S.Ct. at 2541.
 

 In addressing the “notice-and-demand” scheme set forth in La. R.S. 15:499 et seq., the
 
 Beauchamp
 
 court concluded that the admission of a scientific analysis report in accordance therewith “did not violate
 
 Melendez-Diaz
 
 ...” as the scheme “merely requires a defendant to exercise his Confrontation Clause rights prior to trial.”
 
 State v. Beauchamp,
 
 49 So.3d at 9-10.
 

 The
 
 Beauchamp
 
 court also noted that in a
 
 pre-Melendez-Diaz
 
 opinion, the Louisiana Supreme Court had concluded that Louisiana’s “notice-and-demand” statutes were constitutional under
 
 Crawford v. Washington, supra.
 
 See
 
 State v. Cunningham,
 
 2004-2200 (La.6/13/05), 903 So.2d 1110. In rejecting the challenge to the scheme’s constitutionality, the Louisiana Supreme Court noted that to defeat the use of the certificate without the analyst, the defendant need only request a subpoena of the individual five In days pri
 
 *495
 
 or to trial. The court held this requirement did not “infringe upon defendant’s constitutional right to confrontation.”
 
 State v. Cunningham,
 
 903 So.2d at 1121.
 

 In light of
 
 Beauchamp,
 
 it is worth noting that Justice Scalia’s opinion in
 
 Melendez-Diaz
 
 briefly addressed the question of whether a “notice-and-demand” statutory scheme which requires a defendant to note his objection by subpoenaing the analyst is constitutional. Justice Scalia, in footnote 12, opined that in its simplest form, a notice-and-demand statute requiring the prosecution to provide notice to the defendant of its intent to use an analyst’s report as evidence at trial, after which the defendant is given a period of time in which he may object to the admission of the evidence absent the analyst’s appearance live at trial, is constitutional.
 

 Discussion
 

 In the present case, as in
 
 State v. Beauchamp, supra,
 
 the state complied with the statutory requirements of La. R.S. 15:499, et seq., in its May 26, 2009, response to defendant’s discovery request. In its response, the state expressly advised the defendant of its intent to offer into evidence a certified copy of the lab report, which was included in the discovery response, as proof of its contents in conformity with the aforementioned 112statutory articles. This response, including the lab report, was delivered to defense counsel almost six months prior to trial. A review of the certifícate itself indicates that it conformed with the minimum requirements set forth in the law. Accordingly, the issue to be resolved by the court is whether Louisiana’s “notice-and-demand” statutory scheme is such that it would pass constitutional muster under
 
 Melendez-Diaz.
 

 In principle, there appears to be nothing constitutionally offensive about the approach of Louisiana’s statutory scheme requiring the defendant to assert his Confrontation Clause rights prior to trial. The United States Supreme Court’s opinion in
 
 Melendez-Diaz
 
 stated as much in rejecting the dissent’s argument against striking down the Massachusetts approach which provided for no “notice-and-demand.” The issue, if any, would center on whether requiring a defendant to assert that right by virtue of his right to compulsory process is constitutional. In
 
 Melendez-Diaz,
 
 Justice Scalia wrote the following in rejecting the argument that the defendant’s right to subpoena the analyst of his own accord precluded a finding of a Confrontation Clause violation:
 

 [The power to subpoena] — whether pursuant .to state law or the Compulsory Process Clause — is no substitute for the right of confrontation. Unlike the Confrontation Clause, those provisions are of no use to the defendant when the witness is unavailable or simply refuses to appear. Converting the prosecution’s duty under the | ^Confrontation Clause into the defendant’s privilege under state law or the Compulsory Process Clause shifts the consequences of adverse-witness no-shows from the State to the accused. More fundamentally, the Confrontation Clause imposes a burden on the prosecution to present its witnesses, not on the defendant to bring those adverse witnesses into. court. Its value to the defendant is not replaced by a system in which the prosecution presents its evidence via ex parte affidavits and waits for the defendant to subpoena the affiants if he chooses.
 

 [Citations
 
 omitted.]
 

 Melendez-Diaz,
 
 — U.S. at -, 129 S.Ct. at 2540.
 

 Unlike the scenario in
 
 Melendez-Diaz,
 
 however, the state’s duty under the Confrontation Clause is not converted into the defendant’s privilege under the Compulso
 
 *496
 
 ry Process Clause. Under the Massachusetts law, the state’s use of the certifícate of analysis was not dependent on the defendant’s failure to object; the state apparently could use the certificate as prima facie proof of its contents regardless of whether the defendant subpoenaed the analyst. In Louisiana, the mere request for a subpoena by the defendant five days prior to trial rendered the certificate useless to the state as prima facie proof of its contents or of proper custody. La. R.S. 15:501(B)(1). Accordingly, an unavailable or uncooperative analyst becomes the state’s problem in meeting its burden of proof and not the defendant’s in exercising his right to confrontation.
 

 114Therefore, we find that
 
 Melendez-Diaz
 
 is not controlling in cases where the state has followed the proper procedures under La. R.S. 15:499 et seq., and that the admission of the certificate of analysis into evidence at trial did not violate the defendant’s rights under the Confrontation Clause. The state presented sufficient evidence that the substances forming the basis of the two charges against the defendant were cocaine and ecstasy.
 

 This assignment is therefore without merit.
 

 PSI REPORT
 

 In his second assignment of error, the defendant contends that the trial court erred in sentencing him without the benefit of a PSI report, when such a report was ordered but never prepared. The defendant argues that in the absence of the PSI report, the trial court could not have considered the factors set forth in La. C. Cr. P. art. 894.1. The state argues that the defendant’s sentence of life imprisonment is mandatory for a person adjudicated as a fourth felony habitual offender and the law is well settled that in the cases where a sentence is mandatory, the trial court need not justify the sentence under La. C. Cr. P. art. 894.1.
 

 Law
 

 La. R.S. 15:529.1(A)(l)(c)(ii) mandated a sentence of life imprisonment for a fourth felony offender whose current offense and two of | lfihis prior offenses are violations of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for 10 years or more.
 
 [5]
 

 Because the sentence imposed for the habitual offender adjudication is prescribed by statute, the trial court’s compliance with La. C. Cr. P. art. 894.1 is not required.
 
 State v.
 
 Thomas, 41,734 (La.App.2d Cir.1/24/07), 948 So.2d 1151,
 
 writ denied,
 
 2007-0401 (La.10/12/07), 965 So.2d 396;
 
 State v. Gay,
 
 34,371 (La.App.2d Cir.4/4/01), 784 So.2d 714. It would be an exercise in futility for the trial court to discuss the factors enumerated in that article when the court had no discretion in sentencing the defendant.
 
 State v. Sewell,
 
 35,549 (La.App.2d Cir.2/27/02), 811 So.2d 140,
 
 writ denied,
 
 2002-1098 (La.3/21/03), 840 So.2d 535.
 

 La. C. Cr. P. art. 875(A)(1) provides in relevant part that “the court may order ... a presentence investigation.” In
 
 State v. Bell,
 
 377 So.2d 275 (La.1979), the Louisiana State Supreme Court found that “[tjhere is no mandate ... that a presen-tence investigation be ordered.” The supreme court then held that “[sjuch an investigation is an aid to the court and not a right of the accused.”
 
 Bell
 
 at 281. See also
 
 State ex rel. B.A.A.,
 
 44,494 (La.App.2d Cir.5/20/09), 13 So.3d 1183.
 

 
 *497
 

 Discussion
 

 11BThe trial judge in the present case ordered the preparation' of a PSI report after the jury rendered its verdicts on the defendant’s current offenses. However, that order was given before the defendant was adjudicated a fourth felony offender subject to the mandatory sentencing provisions of the statute. Once a mandatory sentence is prescribed by statute, the trial court’s compliance with La. C. Cr. P. art. 894.1 is not required. Therefore, the fact that a PSI report was previously ordered became inconsequential. Furthermore, we note that the jurisprudence holds that such a report is merely an aid to the court and not a right of the defendant.
 

 This assignment lacks merit.
 

 EXCESSIVE SENTENCE
 

 In his last, assignment of error, the defendant argues that the trial court erred in denying his
 
 Dorthey
 
 motion to deviate from the mandatory sentence of life imprisonment for a fourth felony habitual offender. He claims that the sentence is both “grossly disproportionate” to the gravity of his offenses given the “relatively small quantity of drugs” and not “meaningfully tailored” to him as reflected by the trial court’s failure to review a PSI report. The state argues that the defendant fails to point to any circumstances showing that his case is exceptional and that he is a victim of the legislature’s failure to assign sentences meaningfully tailored to his case.
 

 luLaw
 

 At the time of defendant’s adjudication as a fourth felony offender, La. R.S. 15:529.1 provided in pertinent part:
 

 A. (1) Any person who, after having been convicted within this state of a felony ... thereafter commits any subsequent felony within this state, upon conviction • of said felony, shall be punished as follows:
 

 [[Image here]]
 

 [ (c) ](ii) If the fourth felony and two of the prior felonies are felonies defined as a crime of violence under R.S. 14:2(13), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or of any other crime punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisr oned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
 

 In
 
 State v. Dorthey, supra,
 
 the. Louisiana Supreme Court recognized that if a trial judge determines that the punishment mandated by the Habitual Offender Law makes no measurable contribution to acceptable goals of punishment, or that the sentence amounts to nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime, he is duty bound to reduce the sentence to one that would not be constitutionally excessive.
 

 In
 
 State v. Johnson,
 
 1997-1906 (La.3/4/98), 709 So.2d 672, 676, the Louisiana Supreme Court further qualified the
 
 Dorthey
 
 holding permitting a downward departure- from a mandatory minimum sentence in the context of the Habitual Offender Law. Specifically, the court held that to rebut the presumption that the mandatory minimum sentence was constitutional, the defendant had to “clearly and convincingly” show that:
 

 [he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature’s failure to assign sentences
 
 *498
 
 that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
 

 A trial judge may not rely solely upon the nonviolent nature of a crime before the court or of past crimes as evidence that justifies rebutting the presumption of constitutionality.
 
 State v. Johnson, supra.
 

 Discussion
 

 The present case clearly falls within the circumstances enumerated in
 
 former
 
 La. R.S. 15:529.1(A)(1)(c)(ii) which mandated a sentence of life imprisonment for a fourth felony offender when the defendant’s instant felony and two of his prior felonies are defined as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for 10 years or more. The defendant’s instant cocaine distribution conviction and two of his prior felonies involved violations of the Uniform Controlled | ^Dangerous Substances Law punishable by imprisonment for 10 years or more. Because the mandatory life sentence is presumptively constitutional, and therefore not excessive, the defendant was obligated to “clearly and convincingly” show that because of unusual circumstances he is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
 

 The jurisprudence holds that the defendant cannot do so by solely relying upon the nonviolent nature of his most recent or prior offenses. Nor is the defendant’s argument that all his crimes were drug crimes and involved relatively small quantities of drugs persuasive. First, the statute clearly contemplates that a defendant may have convictions on any combination of the enumerated crimes, and the mere fact that the defendant has not committed one particular type does not render him exceptional. Second, the defendant fails to make any showing regarding the quantity of drugs involved in his crimes or in relation to what amount should be deemed “relatively small.” The record before the court yields little information as to the amount of drugs possessed by the defendant, but it should be noted that at least two of his prior convictions were possession of Schedule II CDS with intent to distribute and distribution of Schedule II CDS, both offenses Lnwith exposure of up to 30 years at hard labor. The defendant has failed to satisfy his heavy burden.
 

 This assignment is without merit.
 

 ERROR PATENT
 

 We note that the habitual offender proceedings involved the defendant’s conviction for distribution of cocaine in the instant case; the life sentence was imposed as to that conviction. However, the record does not disclose that any sentence was imposed for the defendant’s instant conviction for possession of ecstasy. This was error. Accordingly, we remand the matter to the trial court for imposition of sentence for this conviction.
 

 CONCLUSION
 

 The defendant’s convictions, adjudication as a fourth felony habitual offender and sentence of life imprisonment are affirmed. The matter is remanded for imposition of sentence for the conviction of possession of ecstasy.
 

 DEFENDANT’S CONVICTIONS, ADJUDICATION AS FOURTH FELONY OFFENDER AND SENTENCE AS FOURTH FELONY OFFENDER AFFIRMED.
 

 
 *499
 
 REMANDED FOR SENTENCING ON CONVICTION FOR POSSESSION OF ECSTASY.
 

 [1]
 

 . Methylenedioxymethamphetamine (MDMA) is commonly known by the street name "ecstasy.”
 

 [2]
 

 . Because the convictions occurred on the same date, the trial court properly considered this offense and the preceding one as one conviction.
 

 [3]
 

 .
 
 State v. Dorthey,
 
 623 So.2d 1276 (La.1993).
 

 [4]
 

 . La. R.S. 15:499 and 501 were amended by Acts 2010, No. 693, § 1. As to Section 499, the legislature merely eliminated the requirement in subparagraph B that the certificate of analysis be signed by the person in charge of the facility. In regard to Section 501, the legislature amended the statute to require the party seeking to introduce a certificate to give written notice of that intent no less than 45 days prior to the commencement of trial. Furthermore, the statute no longer- requires the party against whom it is offered to subpoena the person who performed the examination in order to prevent the subpoena from being deemed prima facie proof of its contents. Section 501 now only requires that the defendant demand — in writing . and served upon the district attorney or attorney general seeking to introduce the certificate — that the person making the examination or analysis testify. If such a demand is made timely as set forth below, the certificate shall not constitute prima facie proof of the facts thereon as set forth in La. R.S. 15:500. Such written demand must be made within 30 days'of the receipt of the notice by the district attorney of its intent to use the certificate, subject to extension for good cause shown if such request is made prior to the expiration of the 30 days.
 

 [5]
 

 . The statute was amended in 2010; the amendments have no bearing on the instant case and would not change the sentence.